IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT ANTHONY ANDERSON, JR.,     *

Plaintiff,          *

v.           *      Civil Action No. SAG-24-1836

KEITH ARNOLD, *Warden*, et al.,     *

Defendants.        *
              ***

**MEMORANDUM**

Plaintiff Robert Anthony Anderson, Jr., who is presently incarcerated at North Branch Correctional Institution ("NBCI"), filed this civil action pursuant to 42 U.S.C. § 1983 against defendants Warden Keith Arnold; Lieutenant Marvin Metz; Chief of Security Ronald Stotler; Major William Gordan, Jr.; Case Manager Specialist Susan Johnson; Case Management Supervisor Lawri T. Winter; Correctional Officer Tony Ray; Correctional Officer Robert Lippold; Correctional Officer Benjamin Terry; Correctional Officer Robert Oates; Correctional Officer Colton Davies; Lieutenant Mr. Bennett; Case Manager Mr. Miller; Sergeant E. Ritchie; and NBCI. ECF No. 1. In the Complaint, Anderson claims that officers used excessive force against him, failed to protect him from harm, and retaliated against him. *Id*. at 6-16 and 20-28. Anderson seeks injunctive relief and monetary damages. *Id.* at 28.

Defendants filed a Motion to Dismiss or, Alternatively, for Summary Judgment.[1] ECF No. 33. Anderson filed an Opposition Response to the Motion and Defendants replied.[2] ECF Nos. 41 and 46. The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Loc. R. 105.6

---

[1] The Clerk will be directed to amend the docket to reflect Defendants' names as stated in their Motion.

[2] Anderson and Defendants filed Motions for Leave to Exceed Page Limit, ECF Nos. 40, 45, which shall be granted. Defendants filed two Motions for Extension of Time, ECF Nos. 42-43, which shall be granted *nunc pro tunc*.

(D. Md. 2025). For the reasons stated below, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, is granted.

### I.    BACKGROUND

#### A.    Complaint Allegations

The allegations in the Complaint, which spans 32 pages and includes over 80 pages of exhibits, centers around an incident wherein Anderson was involved in an altercation with defendant Correctional Officer Tony Ray on May 20, 2024, and several other defendant correctional officers responded. ECF No. 1 at 11. Essentially, Anderson alleges that 1) in the weeks and months leading up to the incident, he had complained of threats against him by staff and inmates and requested a transfer out of NBCI for his protection; 2) on the day of the incident, Officer Ray threatened him and challenged him to a fight; 3) when he tried to defend himself excessive force was used against him; and 4) officers retaliated against him following the incident. ECF No. 1.

Specifically, Anderson alleges that on May 20, 2024, Officer Ray came to his cell and threatened him by stating that he would "beat his ass," and told him that "when you come out for shower I am coming to get you. You going to have two choice[]s I'm going to one click your handcuff and you can come out your cell swinging and get your ass beat like a man or don't come out your cuff and fight, but I'm still going to beat your ass like the little bitch you are." *Id*. at 11-12. Anderson alleges that Ray told him he would "make sure no officer is on the tier and it's clear just for you and me and I won't even wear my pepper spray. You will be our Cumberland George Floyd." *Id*. at 12. Sometime later, Ray returned and handcuffed Anderson by clicking one time and radioed for the door to open. *Id*. at 13. Anderson alleges that "[a]s the Plaintiff['s] cell door open the Plaintiff attempted to refuse to come out of his cell to retreat from confrontation, but the

2

Defendant T. Ray reach his arm into the Plaintiff cell to yank him out the cell to begin an assault." *Id*. Anderson alleges that defendants Lippold, Terry, Oates, and Davis "jump on top of the Plaintiff and began kicking, punching, eye gouging, kneeling on the neck of the Plaintiff and brutally beating the Plaintiff while he was face down and subdue to the floor barely moving while the extreme excessive force was being used against him for several minutes." *Id*. Anderson alleges that he suffered injuries including "severe swelling to his left eye, swelling to his upper right eye, swelling behind his left ear, and dislocation of both his eye/black eyes." *Id*. at 14.

Anderson alleges that the day following the incident, defendant Lieutenant Metz "began his campai[g]n of retaliation." ECF Nos. 1 at 14; 1-26 at 5. Anderson alleges that officers confiscated his personal property "in the attempt to prevent me from contacting my family and to cause me mental injury." ECF No. 1-26 at 5. He was put on an "illicit or illegal policy called 'staff alert,'" and when he returned to his cell, he found urine on his pillow, floor, and jumpsuit. *Id*. at 6. He provides no further details about the alleged retaliation or who he claims put urine on his belongings.

With regard to his failure to protect claims, Anderson alleges generally that he has "addressed multiple concerns about his safety, welfare, and wellbeing being extremely at risk if continued to be house[d] within the NBCI facility due to continued threats made by enemies of the Plaintiff, along with numerous threats made by NBCI staff." ECF No. 1 at 6. Specifically, he alleges that he made such complaints on April 3, 2024, to defendants Susan Johnson and Lawry T. Winters, telling them "[i]f you put me in a situation to which I come in close contact with my enemies, their friends, and or their associates, I will attack first before they get a chance to attack me, I will not allow you all's decisions make me anyone's victim." *Id*. He also alleges that on April 4 and 11, 2024, he sent written requests to be transferred out of NBCI, which were denied

3

by defendants Bennett, Stotler, Johson, and Arnold. *Id*. at 8. Anderson does not provide any details about the alleged threats, including specifically who threatened him, when, where, or how.

### B. Defendants' Motion

Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF 33. The Motion is supported by a Memorandum of Law and numerous exhibits, including video footage of the May 20, 2024, incident, records of the disciplinary proceedings against Anderson, the Intelligence and Investigative Division ("IID") report on the incident, and a transcript of a hearing in which Anderson pled guilty to second-degree assault in the District Court for Allegheny County, Maryland with regard to his actions on that date. ECF Nos. 33-1 through 33-12. Defendants describe the events as seen in the video as follows:

> This video file is two minutes and twelve seconds (2:12) in length. COII Ray can be seen securing Plaintiff's handcuffs through the cell's food slot at approximately 0:26 to 0:36. Plaintiff's cell door opens at approximately 0:56. Plaintiff steps towards COII Ray, who reaches for Plaintiff's arm pursuant to segregation escort procedures, and Plaintiff immediately begins swinging at COII Ray's face at 0:59. Additional officers respond to the tier within approximately 7 seconds and struggle with Plaintiff on the ground, eventually securing him in leg shackles and handcuffs. The officers then pick Plaintiff up at approximately 2:00 and carry him off the tier . . .

ECF No. 33-1 at 11. The Court has reviewed the video, and finds that Defendants' representation of it is accurate, with the exception of their characterization that Ray reaches for Plaintiff's arm "pursuant to segregation escort procedures." *Id*. Defendants offer no evidence to establish that Ray was following segregation escort procedures.

Defendants also submit documents related to an IID investigation conducted following the May 20, 2024 incident. ECF No. 33-8. The report indicates that Anderson attempted to assault Ray with a weapon, and that the weapon, manufactured from a piece of metal, was recovered from the premises. *Id*. at 25-27.

For his role in the incident, Anderson was issued a Notice of Inmate Rule Violation for engaging in a disruptive act; committing assault or battery of staff; possession, use or manufacture of a weapon; and possession or passing of contraband. ECF No. 33-5. Anderson initially requested that Ray appear at his hearing, because "he threatened to harm me before the incident from 3 p.m., I am going to ask him if he threatened to assault me and one click me." *Id*. at 8. However, Anderson ultimately pled guilty to all infractions and was sanctioned with 180 days of segregation, 180 days loss of credits, and 60 days lost of visits, phones, and tablet. ECF No. 33-5 at 4.

Anderson was also charged with criminal offenses in the District Court for Allegheny County as a result of the incident. Anderson pled guilty to second-degree assault and was sentenced to 18 months' imprisonment, consecutive to his current sentence. ECF 33-11 at 5, 8. The factual basis for the guilty plea included that when the cell opened, "the defendant stepped out of his cell with his hands behind his back . . . Officer Ray . . . tried to get his arm for his escort to his shower . . . he manipulated his left hand free . . . he then brought his hands from behind his back to the front, attempted to assault . . . CO Ray with a homemade weapon." Guilty Plea Hearing Transcript, ECF No. 33-11 at 5. Anderson's defense attorney noted that Anderson had mental health issues, was not receiving his medication, and had been evaluated for competency. *Id*. at 6. Anderson stated that he is "going to take responsibility for [his] action no matter what the situation was," and that "I wish that it never happened . . . with that being said, it did. And so that's why instead of going through all the motions with the courts, I'll just say, Hey, let's get this over with." *Id*. at 7.

## II.    STANDARD OF REVIEW

In reviewing the Complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of

6

misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Defendants alternatively seek summary judgment. Typically, summary judgment is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To present the issue, the nonmovant is typically required to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d), explaining why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery. In this case, Plaintiff did not file a Rule 56(d) affidavit suggesting discovery is needed. Instead, he submitted evidence to counter the summary judgment motion, by way of a declaration under penalty of perjury identifying potential material facts to be resolved. ECF 41-3.

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

While self-represented pleadings are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

## III.   DISCUSSION

Defendants seek dismissal of the Complaint or summary judgment in their favor, arguing that 1) they are entitled to Eleventh Amendment immunity in their official capacities; 2) NBCI is not subject to suit under § 1983; 3) they are entitled to judgment as a matter of law for the alleged use of excessive force; 4) Anderson failed to state a claim regarding his classification and case management decisions and failure to protect or they are entitled to summary judgment on those claims; 5) Anderson fails to state a claim for retaliation; 6) the Complaint should be dismissed pursuant to 28 U.S.C. § 1915 as frivolous or malicious; 7) Anderson failed to exhaust his administrative remedies; and 8) they are entitled to qualified immunity. ECF No. 33-1.

### A. Exhaustion of Remedies

Defendants raise the affirmative defense that Anderson failed to exhaust his administrative remedies. ECF No. 17-1 at 8-11. The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence. It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). Therefore, a claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *See Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'… normally creates an obligation impervious to judicial discretion") (alteration in original)). However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose

a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("The … PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines …." *Woodford*, 548 U.S. at 88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (finding that "the inmate cannot be required to exhaust [administrative remedies] … when prison officials prevent inmates from using the administrative process").

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S."), § 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of a "grievance against an official or employee of the Division of Correction [DOC] …." C.S. § 10-206(a). Regulations promulgated by DPSCS concerning the ARP process define a "grievance" to include a "complaint of any individual in the custody of the

10

[DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Incarcerated Individual Grievance Office ("IIGO") against any DOC official or employee. *See* C.S. § 10-206(a). When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IIGO. However, if the prison has a grievance procedure that is approved by the IIGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IIGO. *See* C.S. § 10-206(b).

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP request with his facility's "managing official," COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IIGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[3]

---

[3] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

When filing with the IIGO, a prisoner is required to include copies of the following:  the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).

If the grievance is determined to be "wholly lacking in merit on its face," the IIGO may dismiss it "without a hearing …."  C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B).  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IIGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208; COMAR 12.07.01.07–.08.  The conduct of such hearings is governed by statute.  *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't, § 10-206(a)(1).

The decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.  C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2).  However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  *See* C.S. §§ 10- 209(b)(2), (c); COMAR 12.07.01.10(B).

The statute provides for judicial review.  C.S. § 10-210.  But "[a] court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies provided" in C.S. §§ 10-201 through 10-210.

Defendants argue that Anderson did not have time to exhaust his administrative remedies as to his excessive force claim because he filed the instant case less than thirty days after the incident at issue occurred. ECF No. 33-1 at 35. Anderson submitted his Complaint to prison authorities for filing on June 11, 2024, *see* ECF No. 1 at 31, alleging that officers used excessive force against him on May 20, 2024. ECF No. 33-1 at 36. Therefore, Defendants argue that there was not sufficient time to complete even the first step of the administrative grievance procedure. *Id*. Defendants also argue that Anderson admits that he filed appeals, but that he did not wait for a response prior to filing suit. *Id*.

Notwithstanding the short time frame, the evidence shows Anderson exhausted his administrative remedies with regard to his excessive force claim. Defendants acknowledge that "'when there is an Intelligence and Investigative Division investigation into an officer's use of force, Maryland's scheme for administrative remedies is unavailable.'" ECF No. 33-1 at 36 (quoting *Younger v. Crowder*, 79 F.4th 373, 381 (2023)). Anderson's ARP complaining of excessive force on May 20, 2024, was procedurally dismissed due to the IID investigation. ECF No. 20-6. The response was dated June 6, 2024, so the instant Complaint was filed subsequent to that dismissal confirming that the ARP process was unavailable to him. *Id*. As such, Anderson's excessive force claims cannot be dismissed on the basis of failure to exhaust administrative remedies.[4]

### B. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions

---

[4] Defendants also conclusively state, without evidentiary support, that Anderson failed to exhaust his administrative remedies with regard to his other claims. ECF No. 33-1 at 36. The claims will not be dismissed on that basis, however, because Defendants have not met their burden of proof.

while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams*, 77 F.3d at 761. On the subjective element, an inmate must show that the guards used force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In assessing this element, a court considers "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat;" and "(4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321).

As for the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9). Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury. *Id.* at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). Verbal abuse of inmates by guards, without more, states no claim of assault. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979); *see also Carter v. Morris*, 164

14

F.3d 215, 219, n.3 (4th Cir. 1999) (rejecting use of racial epithets as a basis for constitutional claim). The threat alleged in this case is not condoned by this court, but it falls short of acts forbidden by the Fourth, the Fourteenth, or the Eighth Amendments. *See Pink v. Lester*, 52 F.3d 73, 75 (1995) ("[N]ot all undesirable behavior by state actors is unconstitutional.").

The evidence viewed in the light most favorable to Anderson shows that excessive force was not used against him on May 20, 2024. There is a factual dispute as to whether Ray threatened Anderson at his cell before the incident, however, the dispute is not material. Even assuming Ray made alleged threats, the evidence is clear that Ray did not act on the threats or otherwise use excessive force against Anderson, nor did the other officers who responded to the incident.

The video shows Ray standing calmly outside the cell as he speaks to Anderson. There is no visible indication that Ray is making threats or preparing for a fight. Ray is facing slightly to the left and away from the cell as the door opens. His right arm is seen reaching into the cell after the door is opened. Ray is not moving in an aggressive or urgent manner. Instead, Ray's right arm reaches into the cell in a manner which is consistent with reaching behind Anderson to escort him out. Then, Anderson suddenly and rapidly exits the cell toward Ray simultaneously swinging aggressively at Ray's head. Anderson continues to attack as Ray deflects his repeated swings. All of Ray's actions are defensive; at no point does Ray attempt to fight back against Anderson. Within seconds, Ray brings Anderson to the floor just as other officers are arriving on the scene. Several officers surround Anderson on the floor, holding him down as they secure him. No one is punching or kicking him. After he is secured, Anderson is lifted up and calmly carried away.

While Anderson alleges that he sustained serious injuries including that his eyes were "gouged out," the medical records included with the IID investigative report indicate that there was only "mild redness to the left eye" and "superficial abrasion[s]" on his forehead and left

15

shoulder.  *See* ECF No. 33-7 at 14-15.  Further, Anderson pled guilty to both disciplinary infractions and criminal assault charges, admitting that he assaulted Ray.  ECF Nos. 33-5 at 9; 33-11.  While Defendants' argument that Anderson is precluded from claiming excessive force because he pled guilty to assault is not persuasive – both can be true – the video evidence, corroborated by the medical records and Anderson's admissions, clearly demonstrates that no excessive force was used against him during this incident.  Accordingly, Ray and his fellow officers are entitled to summary judgment.[5]

### C. Failure to Protect

Considered under Rule 12(b)(6), Anderson's claim that Defendants failed to protect him from harm fails.  In order to prevail on an Eighth Amendment claim of failure to protect from violence, Anderson must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm.  *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987).  "Prison conditions may be 'restrictive and even harsh,'" but "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."  *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of

---

[5] Defendants argue that the Complaint should be dismissed pursuant to 28 U.S.C. § 1915 as frivolous or malicious. ECF No. 33-1 at 33.  While Anderson's Complaint directly conflicts with the video evidence, Anderson's criminal defense attorney represented to the District Court that he was evaluated for competence, has mental health issues, and is not receiving his medication. ECF No. 33-11 at 6.  To the extent that Anderson's mental health may have played a role in his erroneous perception or recollection of events, the Court is not inclined to find that he has frivolously or maliciously filed the Complaint.  Additionally, there is no evidence that directly refutes Anderson's claims that Ray threatened him.

serious harm exists, and he must also draw the inference." *Id*. at 837, *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id*. A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128, *see also Ford v. Hooks*, 108 F.4th 224, 231 (4th Cir. 2024)

17

(finding officer who questioned prisoner on housing unit very loudly about who he needed protection from and why he wanted protective custody may have knowingly exacerbated the danger making response unreasonable).

Actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844. Where prison officials conclude that they did not have enough information to carry out an appropriate investigation of a prisoner-plaintiff's claim that his life was endangered they had not "*consciously disregarded*" the risks he described. *Ford*, 108 F.4th at 231 (noting plaintiff had not provided names of prisoners who represented a threat and prison officials did not recognize their responses were inappropriate) (emphasis in original).

Here, Anderson alleges that he made repeated and consistent complaints about his safety over the course of months, including writing multiple grievances, making written requests to be transferred out of NBCI, and making verbal requests during meetings with case management officials. ECF No. 1 at 6-11. He alleges that he repeatedly complained that he was not safe due to ongoing threats from his enemies, their associates, and prison staff, but he does not identify any specific threats. *Id*. Anderson presents no facts to support any allegation that the threats he complained of were rooted in any real substantial risk of harm to him nor does he allege that any harm befell him as a result of anyone's failure to act on his complaints. Notably, Anderson describes only one threat with any particularity – that Ray threatened him prior to releasing him from his cell on May 20, 2024 – but he does not claim to have communicated that specific threat to anyone. Anderson's generalizations that he was unsafe in all of NBCI due to non-specific threats made by unnamed persons which did not result in any harm to him is insufficient to support

18

a claim that any Defendant knew of a substantial risk and failed to act.[6]  Defendants' Motion, construed as a motion to dismiss, is granted as to the failure-to-protect claim.

### D. Retaliation

Finally, Anderson alleges that Defendant Metz and other unknown defendants retaliated against him.  Specifically, Anderson alleges Officer Metz lead a "campaign of retaliation" against him after the May 20, 2024 incident; he was placed illegally in "staff alert," his property was confiscated, and when he later returned to his cell, he found urine on his belongings.  ECF No. 1 at 14; 1-26 at 5-6.

To prevail on a claim of retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right."  *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Anderson's Complaint is unclear as to whether the retaliatory acts were in response to a protected act.  But even if it were clear, the claim fails because Anderson does not allege any defendants' personal participation in any conduct that violated his First Amendment rights.  Anderson does not allege that any individual defendant was responsible for placing him in "illegal" staff alert status, confiscating his property, or placing urine on his belongings.  He alleges that Officer Metz led a "campaign of retaliation," but he does not specify any actual conduct by Officer Metz to further such a "campaign."  *See* ECF No. 1 at 14; 1-26 at 5.  Furthermore, he does not claim that any supervisory defendant was deliberately indifferent to any known unconstitutional acts of a subordinate.

---

[6] To the extent Anderson complains that he should be transferred out of NBCI, inmates are not entitled to be housed at any particular security classification or cell. *See McKune v. Lil*, 536 U.S. 24, 26 (2002) (stating that the "decision where to house inmates is at the core of prison administrators' expertise"); *Veney v. Wyche*, 293 F.3d 726, 734 (4th Cir. 2002) ("In formulating and executing decisions relating to cell assignments, we must allow prison authorities the discretion to take into account the particular safety and security concerns facing [the] inmates . . . ."); *Slezack v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) ("[T]he security and custody classification of state prison inmates is a matter for state prison-official discretion whose exercise is not subject to federal procedural due process constraints.").

Liability under § 1983 attaches only upon a defendant's personal participation in the constitutional violation.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).  Generally, liability is not imposed on supervisors for the wrongdoing of their employees.  *See id.* (no respondeat superior liability under § 1983).  Rather, a supervisor may be liable for the violations of their subordinates if the supervisor knew the subordinates engaged in conduct that posed an unreasonable risk of constitutional injury and failed to respond in such a manner that gives to an inference of deliberate indifference or tacit authorization of their subordinates' bad acts.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  Anderson does not allege that any individual defendant engaged in retaliatory actions, nor does he allege that any individual defendant is subject to supervisory liability.  Therefore, his claim of retaliation must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, construed as a motion for summary judgment, is granted as to Anderson's excessive force claim.  The Motion, construed as a motion to dismiss, is granted as to Anderson's failure-to-protect and retaliation claims. A separate Order follows.

Date:  March 19, 2026

_____/s/_____
Stephanie A. Gallagher
United States District Judge